IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 19-00165LEK |
| | ) | |
| Plaintiff, | ) | Honolulu, Hawaii |
| | ) | December 18, 2019 |
| vs. | ) | |
| | ) | |
| BARBARA WILLIAMS, | ) | INITIAL APPEARANCE, WAIVER OF INDICTMENT, ARRAIGNMENT & PLEA |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LESLIE E. KOBAYASHI
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: GREGG P. YATES, ESQ.
Office of the United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Suite 6100
Honolulu, Hawaii 96850

For the Defendant: BIRNEY B. BERVAR, ESQ.
Bervar & Jones
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813

Official Court Reporter: Cynthia Fazio, RMR, CRR, CRC
United States District Court
300 Ala Moana Blvd., C-270
Honolulu, Hawaii 96850

Proceedings recorded by machine shorthand, transcript produced with computer-aided transcription (CAT).

WEDNESDAY, DECEMBER 18, 2019 2:49 P.M.

THE COURTROOM MANAGER: This is criminal case CR19-00165LEK, United States of America versus Barbara Williams.

The matter is set for initial appearance, waiver of indictment, and guilty plea.

Counsel, please make your appearances for the record.

MR. YATES: Good afternoon, Your Honor. Gregg Yates for the United States and with me at counsel's table is Special Agent Megan Crowley from the FBI.

THE COURT: All right. Good afternoon to you both.

Mr. Bervar?

MR. BERVAR: Good afternoon, Your Honor. Birney Bervar on behalf of Barbara Williams, who is present.

THE COURT: All right. Good afternoon to you both.

And the record will reflect the presence of Mrs. Williams. How are you today?

THE DEFENDANT: Doing fine, Your Honor. Thank you.

THE COURT: We are here for your change of plea. It's my understanding that you intend to change your plea and to plead guilty pursuant to a plea agreement with the United States. Is this correct?

THE DEFENDANT: It's correct, Your Honor.

THE COURT: Before I can accept your guilty plea to the information -- and the gentleman behind you can be seated

if you wish, yes.

Before I can accept your guilty plea to the information, I must know that you understand what you are doing, that you are pleading guilty freely and voluntarily, that there is a factual basis for your change of plea and that the ends of justice will be met by permitting you to change your plea to guilty. To make these determinations I will ask you questions and if at anytime you do not hear or understand the questions I ask of you, please say so. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: If you'd please administer the oath to Mrs. Williams.

(The defendant was sworn to answer truthfully.)

THE COURT: What is your full name?

THE DEFENDANT: Barbara Ann Williams.

THE COURT: And how old are you?

THE DEFENDANT: I'm 72.

THE COURT: And how far did you go in school?

THE DEFENDANT: I've been to high school, went to some college.

THE COURT: All right. You're able to read and write in English, correct?

THE DEFENDANT: Oh, yes, ma'am.

THE COURT: Are you feeling well and alert today and

able to make decisions?

THE DEFENDANT: Yes.

THE COURT: Have you taken any medication or alcohol today?

THE DEFENDANT: No.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No.

THE COURT: Mr. Bervar, to the best of your knowledge is your client fully competent and capable of entering a valid plea here today?

MR. BERVAR: Yes, Your Honor.

THE COURT: The Court finds that Mrs. Williams is fully competent and capable of entering a valid plea.

Now, have you received a copy of the information, that is the written charges filed against you in this case on November 25, 2019?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you fully discussed these -- this charge and all the facts surrounding it with your attorney, Mr. Bervar?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the legal representation that you received from Mr. Bervar and his office as your attorneys?

THE DEFENDANT: Yes.

THE COURT: And, Mr. Bervar, are you in agreement with your client's decision to plead guilty today?

MR. BERVAR: Yes, Your Honor.

THE COURT: Now, Mrs. Williams, you do have a constitutional right to require that a group of citizens called a grand jury review your case and determine whether or not the government has brought forth sufficient evidence to bring criminal charges against you. If the grand jury finds that the evidence is sufficient it would return a criminal charge against you in the form of what's called an indictment. If, however, the grand jury found that the evidence is not sufficient because there's no probable cause to believe that you committed the offense, then you would not be indicted and you would not be charged.

If you waive or give up your right to grand jury review of your case, the charges will proceed against you on the United States Attorney's information just as though you had been indicted by a grand jury. Do you understand your right to grand jury review in your case?

THE DEFENDANT: Yes, I do.

THE COURT: Do you wish to waive or give up your right to have the grand jury review the information and evidence and to return an indictment and to proceed on the criminal charges as stated in the information?

THE DEFENDANT: No.

MR. BERVAR: You do wish.

THE DEFENDANT: Yes, I do.

THE COURT: Okay.

THE DEFENDANT: Okay.

THE COURT: And have you read and signed the waiver of indictment form which states that you understand you've been accused of one or more offenses punishable by imprisonment for more than one year, and that you were advised in open court of your rights and the nature of the proposed charges against you?

THE DEFENDANT: Yes.

THE COURT: Right. You read this before you signed it; is that correct?

THE DEFENDANT: Yes.

THE COURT: Did you go over it with your attorney, Mr. Bervar?

THE DEFENDANT: Yes.

THE COURT: All right. And, Mr. Bervar, you also signed this waiver of indictment form; is that correct?

MR. BERVAR: I did, Your Honor.

THE COURT: And do you believe that you had an opportunity to explain it to your client and that she understood it?

MR. BERVAR: Yes, Your Honor.

THE COURT: All right. The Court finds that

Ms. Williams understands and has knowingly waived her right to a grand jury review and waiver of indictment, and this is her signature. I have also signed the waiver of indictment, which is signed and dated December 18, 2019.

Now, I have been given the original plea agreement in this case. It's file marked December 18, 2019. The pages are numbered. The last page is numbered 18. And it has four signatures and the date of December 18, 2019. Is that your signature on the last page, Mrs. Williams?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you have an opportunity to review this entire document and to discuss it with Mr. Bervar before you signed it?

THE DEFENDANT: I did.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: I do.

THE COURT: All right. So in the plea agreement, among other things, it indicates that you acknowledge that you have been charged in an information and that you are agreeing to plead guilty to the one count in the information. In return the government after your sentencing will move to dismiss the indictment that was filed against you in the other matter. Is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And is this agreement the only and entire agreement that you have with the government?

THE DEFENDANT: Yes.

THE COURT: All right. Has anyone made any other or different promise or assurance of any kind to you in order to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone attempted to threaten you or pressure you or force you to plead guilty?

THE DEFENDANT: No.

THE COURT: Why don't you have a seat.

And, Mr. Yates, if you would kindly go over the major terms of the plea agreement, including the charges as well as any waiver of appeal rights that Ms. Williams may have.

MR. YATES: Yes, Your Honor. The plea agreement has the following significant paragraphs that should be noted in open court:

Paragraph 4, the defendant agrees to waive indictment and plead guilty to the information, and the prosecution agrees to dismiss the superseding indictment in Criminal Number 17-101 against the defendant after sentencing.

Paragraph 7 sets forth the potential penalties.

Paragraph 8 sets forth the factual basis of the plea.

Paragraph 10 sets forth sentencing stipulations.

Paragraph 13 contains a waiver of the right to appeal,

including conviction, any sentence within the guideline range, any restitution order or the manner in which the sentence or restitution order was determined, including any legally waivable claims, but the defendant retains the ability to appeal any portion of the sentence greater than the guideline range.

Paragraph 13(a) waives the right to collaterally challenge the conviction or sentence, except that portion of the sentence that is greater than the guideline range and except upon the basis of a claim of ineffective assistance of counsel.

Paragraph 17 sets forth a waiver of trial rights.

Paragraph 21 contains a cooperation provision.

And Paragraph 23 contains a term indicating that the prosecution may file a motion pursuant to 5K1.1 of the sentencing guidelines in the event that it determines in its discretion that the defendant has fully cooperated in the investigation.

Thank you, Your Honor.

THE COURT: All right. Thank you very much.

Ms. Williams, if you could please stand. What Mr. Yates just explained to me, is that what you understand to be your agreement with the government?

THE DEFENDANT: Yes, ma'am.

THE COURT: And the plea agreement contains a waiver

of certain appeal rights. In general, you have the right to appeal your sentence and the manner in which it is determined, but in this agreement you're indicating that you're giving up that right to appeal and only in two certain limited circumstances, such as if I should depart from the guideline range and impose a sentence that's higher than that, you'd still be able to appeal that portion. In addition, on a collateral attack you'd be able to raise ineffective assistance of counsel by your attorney. But in almost all respects you'd not be able to waive or challenge your sentence. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Now, for the one count in the information, in the plea agreement it sets forth what the possible penalties are. Do you understand that the possible penalties that you would face if you plead guilty as charged to the information include a term of imprisonment from zero to three years, a fine from zero to $250,000, plus a term of supervised release from zero to one year, and the Court must impose a $100 special assessment mandatory as to each count to which you plead guilty. In addition, the Court can order restitution paid to any victims. Do you understand these are the possible penalties that you'd face should you plead guilty to the information?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, during your period of supervised release you must comply with a set of conditions. These will be explained to you by a probation officer. The conditions will include that you obey the law, that you report to the probation officer as required and other conditions. If the Court finds that you violated any of those conditions during your period of supervised release, you could be ordered to serve prison time. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you presently on probation, parole or supervised release from any other case?

THE DEFENDANT: No.

THE COURT: Mr. Yates, does the United States contend that any felony offense to which Mrs. Williams is pleading guilty today occurred while she was out on bond in relation to some other federal criminal charge?

MR. YATES: No, Your Honor.

THE COURT: Ms. Williams, are you a citizen of the United States?

THE DEFENDANT: Yes, ma'am.

THE COURT: As a citizen, if convicted of the charges in this case, you may lose valuable civil rights, including the right to vote, the right to serve on a jury, the right to hold public office and the right to possess any kind of firearm. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is there any forfeiture allegations with regard to Mrs. Williams?

MR. YATES: No, Your Honor.

THE COURT: All right. The Court also might order you to provide notice of your conviction to victims of your offense. Do you understand this?

THE DEFENDANT: The question?

THE COURT: I'm sorry. So if you plead guilty and before the sentencing, one of the things that I might or I can require you to do is for us to send notice to any potential victims that are out there to give them notice of your offense. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. The United States Sentencing Commission has issued guidelines for judges to consider in determining sentences in cases such as yours. Have you and Mr. Bervar discussed these guidelines and how they may affect your case?

THE DEFENDANT: Yes.

THE COURT: Okay. I will determine your guideline range for your sentence, but I can't do that until after the presentence report and investigation has been completed. The probation officer will write up a draft of that report. You and Mr. Bervar will be given a copy as will Mr. Yates. You

will have an opportunity to read through that copy of the draft report and to make any comments or objections to the contents of that report. And then the probation officer will have an opportunity to respond to any objections. Only after that process has been followed will it be put in final and provided to me. At the hearing I will resolve any objections or disputes between the parties about how the guidelines should be calculated. And at that time then I will determine your guideline range. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. I also have the authority to depart from the guideline range and to impose a sentence that might be higher or lower than the guideline range. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. So I'm also going to determine your sentence based on any facts that you admit to today. So you don't have to admit to anything you don't agree with the government on, but if you do admit to certain facts, I can rely on those admissions and as a result your sentence might be increased. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. If the sentence is more severe than you expected, you're still going to be bound by your plea. So even though you don't like the sentence I impose you won't be

able to take back your guilty plea at that point. So the time to make that decision is now. You understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Parole has been abolished in the federal system. So if you are sentenced to prison, you're not going to be released early on parole. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. You have certain rights under the Constitution that you'll waive or give up by pleading guilty and I need to go over those rights with you now.

You have the right to plead not guilty and to continue or persist in that plea. You would then have the right to trial by jury. At trial you'd have the right to have a lawyer represent you and defend you, a right to see and hear all the witnesses, a right to testify or remain silent and not testify. A right to have your lawyer cross-examine those witnesses and a right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At trial you'd be presumed to be innocent and the United States would have the burden of proving you guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States met their burden. And if you are found guilty after a trial you'd be able to appeal your conviction to a higher court and if you could not afford to pay the cost of such an appeal, the

government would pay those costs for you.

Do you understand that you have this right to trial as well as the other rights I just explained?

THE DEFENDANT: Yes, ma'am.

THE COURT: But if you plead guilty you're going to give up these rights and there will be no trial as well as the other rights I just explained. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: In addition, as long as you plead not guilty you have the right to remain silent, but if you choose to plead guilty today I am going to ask you to tell me in your own words what it is that you did that makes you guilty of the offense in the information and you have to answer truthfully under oath even though your answers establish that you committed a crime. Do you understand this?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. You may be seated.

Mr. Yates, if you will please summarize the essential elements that the government would be required to prove by evidence such as testimony of witnesses at trial before Mrs. Williams would be convicted.

MR. YATES: Yes, Your Honor. Should this matter proceed to trial the government would have to prove the following elements beyond a reasonable doubt:

To prove a misprision of felony Title 18, Section 4 of

the United States Code, we must show:

First, a federal felony was committed as charged in the superseding indictment, Criminal Number 17-101LEK, in particular Counts 1 through 15.

Second, the defendant had knowledge of the commission of that felony.

Third, the defendant had knowledge that the conduct was a federal felony.

Fourth, the defendant did an affirmative act as alleged to conceal the crime.

That's it, Your Honor. Yes, Your Honor.

THE COURT: All right. Thank you very much.

Mr. Bervar, do you object or disagree with any part of the essential elements that Mr. Yates has set forth?

MR. BERVAR: No, I agree those are the elements.

THE COURT: All right. Ms. Williams, if you'd please stand.

Do you fully understand if there were a trial on the charge in the indictment of misprision of felony, that the government would have to bring witnesses and physical evidence necessary to prove each of those elements beyond a reasonable doubt before you could be convicted, you understand that that's what they would have to prove?

THE DEFENDANT: Yes, ma'am.

THE COURT: I'm sorry, you have to answer out loud.

THE DEFENDANT: Yes.

THE COURT: All right. Thank you.

THE DEFENDANT: Yes.

THE COURT: Now, in the plea agreement, starting at Page 4 under Paragraph 8, there are factual stipulations as to a summary of facts upon which your plea is based. Have you read carefully through this section before the hearing today?

THE DEFENDANT: Yes, I did.

THE COURT: All right. And do you -- are these facts all true in every respect?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. So tell me what it is that you did beginning on or about between May 16, 2013, and December 2015 that makes you guilty of misprision of felony as stated in the indictment, what did you do?

THE DEFENDANT: Well, Your Honor, I was working with my son as a CEO of the MEI company. I did mailing, U.S. mailing, wire communication, made bank deposits on behalf of the company.

THE COURT: So let me just ask you a few questions with regard to that. So when you refer to your son, would that be a person by the name of Anthony Williams?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: And did you know that Anthony Williams formed the entities Mortgage Enterprise Investments, also known

as MEI, and the Common Law Office of America, CLOA?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Did you know that through MEI, your son Anthony Williams offered mortgage debt relief in Hawaii?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. And did he have the required license in Hawaii to service mortgages?

THE DEFENDANT: No, ma'am.

THE COURT: And did you know that through Common Law Office of America your son Mr. Williams offered legal services, including representation in mortgage related litigation and wills, trusts, power of attorney and document drafting?

THE DEFENDANT: Yes, ma'am. Yes.

THE COURT: And did you know he was offering these legal services but was not licensed to practice law?

THE DEFENDANT: Yes.

THE COURT: Did you know that Anthony Williams was representing himself to be an attorney, a private Attorney General and a mortgage servicer?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, I want to turn your attention to the mortgage services that Anthony Williams offered. Were you aware that he was marketing a debt relief program?

THE DEFENDANT: Yes.

THE COURT: And were you aware that he was offering homeowners with mortgages to pay him an up-front fee and then pay him one-half of their regular mortgage payment for one-half the term?

THE DEFENDANT: Yes, ma'am.

THE COURT: And that Anthony Williams was promising falsely that he could and would then be able to extinguish or satisfy their existing mortgage?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did you know that that was false?

THE DEFENDANT: Yes, I did.

THE COURT: Okay. Did you know that Anthony Williams falsely claimed that by filing UCC financing statements and bogus mortgage documents with the Hawaii Bureau of Conveyances and notifying lenders that they no longer had a lien or mortgage on the subject properties, that he was stating falsely that the homeowners' existing mortgages no longer existed?

THE DEFENDANT: Yes.

THE COURT: Now, you've indicated that you did work on behalf of MEI, and this would include the day-to-day operations of that entity; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is that yes?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. While you were handling the

day-to-day operations of MEI, did you know whether or not Anthony Williams was using interstate wire communications and the United States mail to send information or receive information about how these homeowners could extinguish or eradicate their mortgages?

THE DEFENDANT: Yes, ma'am.

THE COURT: And was he using wire communications and the U.S. mail?

THE DEFENDANT: Yes.

THE COURT: Is it your understanding that wire fraud and mail fraud are felony offenses in the federal courts?

THE DEFENDANT: Yes, now it is.

THE COURT: And tell me whether or not given your knowledge of Anthony Williams' practice in making these false statements and false promises to these mortgage holders, tell me whether or not you reported the commission of wire and mail fraud offenses by Anthony Williams to any judge or anyone in civil or military authority in the United States.

THE DEFENDANT: No, ma'am, that was the mistake I made. No, I didn't.

THE COURT: And you understood that some of these mortgage owners had mortgages on property that was located in the State of Hawaii; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And in handling the day-to-day

operations you saw documents that either came in through the mail or wire services that involved properties, real properties held in Hawaii; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Are there any other matters, Mr. Yates, that you would like the Court to cover with Mrs. Williams?

MR. YATES: One brief question, Your Honor. That the defendant knowingly deposited some of these funds in a personal or MEI account rather than reporting those funds.

THE COURT: All right. So, in handling the day-to-day operations of MEI, would part of those responsibilities involve receiving checks or other forms of payments?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And these checks or forms of payments would come from homeowners who had mortgages on real property in Hawaii; is that correct?

THE DEFENDANT: That's correct.

THE COURT: All right. And as part of your day-to-day operations what would you do with those checks or forms of payment?

THE DEFENDANT: Deposit. Deposit it in the bank account.

THE COURT: All right. In whose or what entity's bank account would you deposit it in?

THE DEFENDANT: It was Extraco Bank.

THE COURT: All right. And who was the account holder for that, was it MEI?

THE DEFENDANT: Yes, MEI.

THE COURT: Or was it your personal account?

THE DEFENDANT: No.

THE COURT: No, it was the entity's account, correct?

THE DEFENDANT: Yes.

THE COURT: All right.

MR. YATES: Nothing further is required for the factual basis, Your Honor.

THE COURT: All right. Mr. Bervar, are you aware of any reason why the Court should not accept your client's plea to the one count in the information?

MR. BERVAR: No, Your Honor.

THE COURT: So, Mrs. Williams, I'm going to ask you now, as to the one count in the information charging you with misprision of felony beginning on or about between May 16, 2013, and December 2015, within the District of Hawaii, that you, having knowledge of an actual commission of a felony recognized by the courts of the United States, specifically the use of interstate wire communications to execute a scheme to defraud homeowners and mortgage companies through false representations of fact and material omissions, that you concealed this and did not as soon as possible make known the

same, to some judge or other person in civil or military authority under the United States, to that charge how do you plead, guilty or not guilty?

THE DEFENDANT: I plead guilty, Your Honor.

THE COURT: The Court finds that Mrs. Williams is fully competent and capable of entering an informed plea, that her plea of guilty is knowing and voluntary and contains admissions of fact containing each of the essential elements of the offense charged against her. I now accept the plea of guilty to the one count in the information. I'll reserve acceptance of the plea agreement until after the presentence investigation report is completed and reviewed by the Court. That's what I typically do. So it's not an unusual circumstance.

Further, any acceptance of your plea agreement will not include any waiver of prosecutorial misconduct or judge-created error not known to Mrs. Williams at the time of pleading guilty.

So, Ms. Williams, I am ordering our Probation to prepare that presentence investigation and report. The probation officer will need to interview you. If you wish, Mr. Bervar can be present for that interview. The report is going to contain information about you and your case and is also going to contain a recommendation by the probation officer as to how your guideline range should be calculated. As I

indicated, you'll be given a draft, you'll be able to go over it with your lawyer, to make any comments or objections to the contents of the report. And then you'll be ordered to appear at your sentencing hearing. And at that time I'll take all of that information that's going to be in the report about you, I'll look at any filings that Mr. Bervar, Mr. Yates may file in the case. I'll take all that information and I'll hear from each of the lawyers as to what an appropriate sentence is for you. And an appropriate sentence under the law is one that is sufficient but not greater than necessary to meet the goals of sentencing and that includes just punishment for the offense you just pled guilty to, to dissuade you and others from committing these types of crimes and also to give you an opportunity for rehabilitation.

You yourself will have an opportunity if you wish to speak on your behalf. You don't have to and if you don't it won't be held against you, but if you want to, you can speak to the Court.

And I'll take all of this information along with the presentence report to fashion a sentence that's sufficient but not greater than necessary to meet the goals of sentencing.

All right. Does anyone object to the continued release of Ms. Williams on the previously imposed pretrial release conditions?

MR. YATES: No objection from the government, Your

Honor.

THE COURT: Mr. Bervar?

MR. BERVAR: No, Your Honor.

THE COURT: Yes. And so you've been doing well. You've been under courtesy supervision of the Pretrial Services office in the Western District of Texas. And I believe it's appropriate for you to continue to be out on bond on those same conditions. You've done well and it's even more important now for you to continue to do well because one of the first things that the presentence report writer is going to do is to contact your Pretrial Services officer and find out how well you're doing on pretrial release.

Let's set the sentencing date and time for Ms. Williams.

THE COURTROOM MANAGER: Your Honor, sentencing will be set for April 23rd at 3:30.

THE COURT: All right.

MR. BERVAR: That's good.

THE COURT: All right. Very good. All right. So she's released on the conditions until that date. And then with regard to the underlying matter of Criminal Number 17-00101LEK, I'm going to vacate all of the deadlines and the trial dates related to that as to Ms. Williams only.

MR. BERVAR: All right. Thank you, Your Honor.

MR. YATES: Yes, Your Honor.

THE COURT: All right. Any questions or clarifications from the government, Mr. Yates?

MR. YATES: Nothing from the government, Your Honor.

THE COURT: On behalf of Ms. Williams?

MR. BERVAR: No, Your Honor.

THE COURT: All right. Ms. Williams, good luck to you. I hope you enjoy your holidays with your family and I will see you in April.

THE DEFENDANT: Thank you, ma'am. Same to you.

THE COURT: We're in recess. Good day, everyone.

(The proceedings concluded at 3:20 p.m., December 18, 2019.)

COURT REPORTER'S CERTIFICATE

I, CYNTHIA FAZIO, Official Court Reporter, United States District Court, District of Hawaii, do hereby certify that pursuant to 28 U.S.C. §753 the foregoing pages is a complete, true, and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

DATED at Honolulu, Hawaii, January 9, 2020.

*/s/ Cynthia Fazio*
CYNTHIA FAZIO, RMR, CRR, CRC